**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**GEORGE LEE PARKS**                                                                    **PETITIONER**

**V.**                                                      **CASE #: 1:18-cv-00355-HSO-JCG**

**FRANK SHAW**                                                                      **RESPONDENT**

<u>**REPORT AND RECOMMENDATION**</u>

BEFORE THE COURT is the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed pro se by Petitioner George Lee Parks. Parks challenges his 2015 convictions and resulting sixty-year sentence in the custody of the Mississippi Department of Corrections (MDOC). For the reasons set forth below, Parks has not demonstrated a basis for federal habeas relief, and his Petition should be dismissed with prejudice.

BACKGROUND

A.    <u>Procedural History</u>

On September 29, 2015, a Harrison County, Mississippi jury found Parks guilty of two counts of sexual battery, one count of aggravated assault, one count of kidnapping, and one count of possession of a controlled substance. [13-4] at 47-48. The evidence presented at trial included the testimony of Desiree Stringer, the victim, who testified that on August 27, 2014, Parks beat, stabbed, kicked, punched, and sexually assaulted her while holding her hostage for seventeen to nineteen hours. [13-7] at 55-62.

General surgeon William Kennerly, M.D. treated Stringer after she arrived at the emergency room on August 27, 2014. Dr. Kennerly testified that he "closed 33 wounds" on Stringer's body, including on her head, scalp, ear, shoulder, center back, arm, elbow, hand, wrist, legs, fingers, hip, knee, and foot. [13-8] at 65-66. Dr. Kennerly testified that the wounds were consistent with knife wounds, and the anatomical locations of some of the wounds could not be self-inflicted. *Id.* at 66-67. Other witnesses at Parks's trial included the emergency room nurse who first treated Stringer, several police witnesses, and a forensic scientist specializing in identification of controlled substances. *See Parks v. State*, 228 So. 3d 853 (Miss. Ct. App. 2017), reh'g denied (Apr. 4, 2017), cert. denied, 220 So. 3d 977 (Miss. 2017) (Cause No. 2015-CT-01607-COA). Kristin Cannata and Tonda Adkisson testified "that Parks had engaged in behavior toward them that was similar to the behavior alleged by Stringer." *Id.* at 861.

The Circuit Court of Harrison County sentenced Parks to serve the following sentences in the custody of MDOC: thirty years for Count I, sexual battery; thirty years for Count II, sexual battery; twenty years for Count III, aggravated assault; thirty years for Count IV, kidnapping; and three years for Count V, possession of a controlled substance. [13-4] at 48. The Circuit Court ordered the sentences in Counts I and II to run consecutively and the sentences in Counts III, IV, and V to run concurrently with one another and the sentences in Counts I and II. *Id.* Thus, the Circuit Court sentenced Parks to serve a total term of sixty years in the custody of MDOC. *Id.*

Parks appealed his convictions and sentences to the Mississippi Supreme Court. The case was assigned to the Mississippi Court of Appeals. The Mississippi Court of Appeals affirmed Parks's convictions and sentences in a published opinion. *Parks*, 228 So. 3d at 872. Parks filed a pro se "Application for Leave to Proceed in the Trial Court," which was heard by the Mississippi Supreme Court in *Parks v. State,* Cause No. 2018-M-00739 (Miss. Oct. 5, 2018). The Mississippi Supreme Court denied Parks's Application, finding as follows:

> Each of the issues presented by Parks in his post-conviction motion were [sic] raised on direct appeal, save two, and they are barred by the doctrine of res judicata. Miss. Code Ann. § 99-39-21(3).
>
> Parks claims that his sentence is illegal, but he offers no citation to authority and no argument. This issue is waived. The panel also finds no merit to Parks's claim that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Accordingly, the panel finds the application for leave should be denied.

[1-1].

On November 7, 2018, Parks filed the instant federal Petition under 28 U.S.C. § 2254, stating his grounds for relief as follows:

| **Ground One:** | The trial court erred by allowing improper use of prior bad act evidence. |
| **Ground Two:** | The trial court erred in denying Parks's motion to suppress evidence. |
| **Ground Three:** | It was error to give Instruction S-6. |
| **Ground Four:** | The trial court erred by not granting the pro se motion to dismiss the indictment. |

| | |
|---|---|
| **Ground Five:** | The trial court erred in denying Parks's motion to dismiss indictment on speedy trial violation. |
| **Ground Six:** | Did the trial court err by not ensuring Parks's Sixth Amendment right to a public trial? |
| **Ground Seven:** | Parks was denied a fair trial because of prosecutorial misconduct. |
| **Ground Eight:** | The trial court erred in denying Parks's motion for appointment of new counsel. |
| **Ground Nine:** | The sentence exceeded the maximum authorized by law. |
| **Ground Ten:** | The prosecution did not share the results of the Petitioner's sexual assault exam. |

[1] at 5-22.

Respondent, Warden Frank Shaw, filed his Answer [12] to the Petition, addressing Grounds One, Three, Four, Five, Six, Eight, and Ten on the merits, and asserting that Grounds Two, Seven, and Nine must be dismissed on procedural grounds. Following an extension of time, Parks submitted a one-hundred-twenty-four-page Traverse. [15]. In the Traverse, Parks asserted that he chose to "abandon" or "withdraw" Grounds Two, Four, and Ten of his Petition. *Id.* at 7, 10, 14, 97-98, 103, 120, 123. Respondent did not file a Reply, determining "that no additional Reply to Parks' claims" was necessary because Respondent's Answer "fully addressed Parks' claims." [35] at 3.

Parks then filed a Motion [16] to amend his Traverse, seeking to include thirteen pages of additional briefing on Ground Seven (prosecutorial misconduct).

Respondent filed a Response in opposition to Park's motion to amend, asserting that Parks's motion to amend was futile because Ground Seven is procedurally barred. [18]. The Court allowed Parks' additional briefing on Ground Seven. [26].

The Court denied Parks's motions requesting an evidentiary hearing. [37]. The Court denied Parks's motion for discovery and to expand the record. [38]. The Court denied Parks's motion to amend his Petition to advance numerous new grounds for relief and stay proceedings pending exhaustion of those claims in State court. [39].

## DISCUSSION

A.    <u>Standard of Review</u>

Under 28 U.S.C. § 2254, a federal court may issue the writ of habeas corpus when a person is held in violation of the federal Constitution or laws, permitting a federal court to order the discharge of any person held by a state in violation of the supreme law of the land. *Frank v. Mangum,* 237 U.S. 309, 311 (1915).

1.    <u>The Doctrines of Procedural Default and Procedural Bar</u>

Before considering the merits of a petition under 28 U.S.C. § 2254 for writ of habeas corpus, the Court must first determine if all procedural steps necessary to preserve each issue raised for federal review have been taken. First, the petition must be timely filed with the Court in compliance with 28 U.S.C. § 2244(d)(1).[1] Second, a federal habeas claim is procedurally defaulted, and relief may not be granted, unless

---

[1]There is no challenge to the timeliness of the Petition.

it appears that a petitioner has exhausted all available state court remedies. See 28 U.S.C. § 2254(b)(1).

Similarly, federal courts may not review a habeas corpus claim that is procedurally barred, which occurs when "the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler,* 681 F.3d 597, 604 (5th Cir. 2012). The claim is procedurally barred when "(1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas,* 132 S. Ct. 912, 922 (2012).

A state procedural rule is "independent" when the state law ground for decision is not "interwoven with the federal law." *Michigan v. Long,* 463 U.S. 1032, 1040 (1983). To determine the adequacy of the state procedural bar, the Court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson,* 123 F.3d 858, 860 (5th Cir. 1997). The petitioner "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by petitioner himself." *Id.*

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way a petitioner may overcome these barriers is the same. A federal

district court may review the merits of a claim if the petitioner can show cause and actual prejudice, or that a fundamental miscarriage of justice would result from the Court's failure to consider the claim. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991), holding modified by *Martinez v. Ryan,* 566 U.S. 1 (2012).

For a finding of cause, "there must be something *external* to the petitioner, something that cannot fairly be attributed to him" which prevented him from raising and discussing the claims as grounds for relief in state court. *Id*. at 753 (emphasis in original). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). To apply the fundamental miscarriage of justice exception, a petitioner must prove "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citations omitted). Further, he must support his allegations with new, reliable evidence, that was not presented at trial, and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id*. at 644 (citations omitted).

## 2. Grounds Reviewed on the Merits in State Court

When addressing claims that were reviewed on the merits in state court, the focus in a federal habeas proceeding is not whether there was an error in applying state law but instead whether there has been a denial of rights protected by the United States Constitution. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on

state-law questions." *Id.* at 68. The federal courts do not function as super appellate courts over the states to review errors under state law. *Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir. 1981). The federal courts may not correct errors of state law unless they also violate the constitutional rights of the accused. *Smith v. Phillips,* 455 U.S. 209, 221 (1981).

Even in matters affecting constitutional rights, federal courts have a very limited scope of review. The Court's authority to grant relief to a person held in custody pursuant to a state judgment is narrowly circumscribed by 28 U.S.C. § 2254 (d), which provides that a writ of habeas corpus shall not be granted unless the state court adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* As summarized by the Fifth Circuit Court of Appeals:

> Because "§ 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning," there are three ways a federal court can grant habeas relief: (1) if the state court decision was contrary to clearly established Supreme Court law; (2) if the state court decision involved an unreasonable application of clearly established Supreme Court law; or (3) if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. "AEDPA's standard is intentionally difficult to meet."

*Poree v. Collins,* 866 F.3d 235, 245 (5th Cir. 2017) (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002) and *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015)).

The United States Supreme Court has "adopted the general rule that a constitutional error does not automatically require reversal of a conviction ... and has recognized that most constitutional errors can be harmless." *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991). Automatic reversal is required only if the error was a "structural defect" that permeated "[t]he entire conduct of trial from beginning to end" or "affect[ed] the framework within which the trial proceeds." *Id.* at 309-310. The Supreme Court "typically designate[s] an error as 'structural,' therefore 'requir[ing] automatic reversal,' only when 'the error necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" *Rivera v. Illinois*, 556 U.S. 148, 160–61 (2009) (quoting *Washington v. Recuenco*, 548 U.S. 212, 218–219 (2006)).

B. Ground One –Prior Bad Acts

In Ground One, Parks challenges the trial court's decision to allow Cannata and Adkisson to testify under Mississippi Rule of Evidence 404(b) that Parks "had engaged in behavior toward them that was similar to the behavior alleged by Stringer." *Parks,* 228 So. 3d at 861. Mississippi Rule of Evidence 404(b) provides

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Miss. R. Evid. 404

Parks argued on direct appeal and again argues here that the testimonies of Cannata and Adkisson about Parks's alleged prior bad acts was "clearly intended to establish alleged character traits of Parks and to prove that he acted in conformity therewith by assaulting Stringer." [13-12] at 18. Parks maintains that this evidence "unavoidably inflamed the passions of the jury unfairly prejudicing Parks notwithstanding the limiting instructions given by the trial judge after these two witnesses testified." *Id.* The Mississippi Court of Appeals rejected Parks's argument on direct appeal, holding as follows:

> The record reflects that the circuit court followed the proper two-pronged analysis to determine whether the evidence was "relevant to prove a material issue other than the defendant's character" and whether the evidence's "probative value . . . outweigh[ed] the prejudicial effect." *Welde,* 3 So. 3d at 117 (¶15) (citation omitted). Because the circuit court considered the evidence's admissibility under Rule 404(b) and then filtered the evidence through Rule 403's balancing test, we find no abuse of discretion by the circuit court's decision to admit the evidence. As a result, this issue lacks merit.

*Parks,* 228 So. 3d at 868-69.

Mississippi appellate courts are "free to police their own evidentiary rules." *Pemberton v. Collins*, 991 F.2d 1218, 1224 (5th Cir. 1993). Generally, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Allen v. Vannoy*, 659 F. App'x 792, 800 (5th Cir. 2016). "A fundamentally unfair trial is one that has been 'largely robbed of dignity due a rational process.'" *Id.* (quoting *Gonzales v. Thaler*, 643 F.3d 425, 430 n.20 (5th Cir. 2011)). "The ruling must concern

evidence constituting 'a crucial, critical, highly significant factor upon which the jury based its verdict of guilty." *Id.* (quoting *Gonzales,* 643 F.3d at 431).

Parks alleges the State court's ruling was contrary to *Huddleston v. United States,* 485 U.S. 681 (1988). [15] at 11, 116. The *Huddleston* decision rejected an argument that a federal trial court must find by a preponderance of the evidence that a defendant committed an act before it can be admitted as "similar act" evidence under Federal Rule of Evidence 404(b). *Huddleston* was before the United States Supreme Court on direct appeal, not as an action brought under 28 U.S.C. § 2254. *Huddleston* is an interpretation of Federal Rule of Evidence 404(b) which does not apply to state trial courts. *Huddleston* does not address the issue of prior bad acts evidence in constitutional terms. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The State court's decision was not contrary to, or an unreasonable application of, *Huddleston.*

Furthermore, the testimony of Cannata and Adkisson, even if erroneously admitted, did not render Parks's trial fundamentally unfair. The testimony of numerous witnesses supported the convictions, including Stringer, Dr. Kennerly, the emergency room nurse, several police witnesses, and a forensic scientist specializing in identification of controlled substances. For example, officers who arrived at Parks's residence after his encounter with Stringer on August 27, 2014 observed "a large amount of dried and fresh blood on [Parks's] left hand, and his right hand was

swollen." *Parks,* 228 So. 3d at 858. Blood swabbed from Parks's left hand and a knife found in his home contained a mixture of both Parks's and Stringer's blood. *Id.* at 859. In Parks's home, officers also observed a large amount of dried blood on the floor, the walls, and a bedroom mattress. *Id.* at 858-59. Parks is not entitled to relief on Ground One.

C. Ground Three – Jury Instruction S-6

In Ground Three, Parks alleges the Circuit Court erred in giving Jury Instruction S-6. [1] at 8. Instruction S-6 provided, "[t]he Court instructs the jury that uncorroborated testimony of a sex crime victim is sufficient to support a conviction if accepted as true by the finder of fact." [13-4] at 22.

On direct appeal, Parks argued that "Instruction S-6 constitutes an improper comment on the evidence, it is argumentative, and it encourages circumvention of the state's obligation to prove guilt beyond a reasonable doubt." [13-12] at 29. Parks alleged that "[t]he trial judge clearly told the jury that the evidence was sufficient, as a matter of law, to convict Parks if the jury believed Stringer." *Id*. According to Parks, Instruction S-6 eliminated the consideration of whether there was corroborating evidence. *Id.* at 31.

The Mississippi Court of Appeals considered these arguments by Parks and found the Circuit Court did not abuse its discretion in granting Instruction S-6 because

> jury instruction S-6 did not comment on the weight of the evidence or
> tell the jury how to weigh the credibility of Stringer's testimony. Nor did

the instruction mention any aspect of Stringer's testimony relative to a determination of credibility. *Compare Bester v. State,* 212 Miss. 641, 646, 55 So.2d 379, 380 (1951) (finding that a granted jury instruction was objectionable because the instruction commented on the weight of the evidence and singled out and gave undue emphasis and prominence to certain portions of the witness's testimony). Instead, instruction S-6 simply conveyed to the jury that, if they found Stringer's testimony true, even if no corroborating evidence existed, they could find that the testimony supported Parks's conviction. *See Lee v. State,* 242 Miss. 97, 106, 134 So.2d 145, 149 (1961) (stating that a rape victim's evidence was sufficient to sustain a conviction without corroboration where the testimony was 'consistent with the surrounding circumstances and conditions shown by the evidence" (citations omitted)). Furthermore, jury instructions S-1 and S-2 informed the jury that they were to consider the evidence to determine whether the State proved that Parks committed the crimes charged beyond a reasonable doubt.

*Parks,* 228 So. 3d at 871.

Parks maintains the Circuit Court's decision to allow Instruction S-6 denied him the Sixth Amendment right to a jury verdict of guilt beyond a reasonable doubt. Parks submits this is a structural error under *Sullivan v. Louisiana,* 508 U.S. 275 (1993), requiring reversal. Parks did not present a constitutional argument to the State court regarding Instruction S-6 and has procedurally defaulted his Sixth Amendment claim based on *Sullivan.* "[W]here petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001).

Even so, *Sullivan* is not on point. In *Sullivan,* the United States Supreme Court concluded an erroneous reasonable-doubt instruction violated the jury-trial guarantee and invalidated all the jury's conclusions, thereby making appellate review impossible. *Sullivan,* 508 U.S. at 282. The charge in *Sullivan* instructed that to

convict, guilt must be found beyond a reasonable doubt, but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt" that the defendant was guilty. *State v. Sullivan*, 596 So. 2d 177, 185-86 and n.3 (La. 1992), rev'd, 508 U.S. 275 (1993). The United States Supreme Court had previously found in *Cage v. Louisiana*, 498 U.S. 39, 41 (1990) that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. In *Sullivan,* the United States Supreme Court established that a *Cage* violation could never be held harmless error but, rather, required outright reversal. *Sullivan,* 508 U.S. at 282.

After these decisions, the United States Supreme Court decided *Victor v. Nebraska* and held, "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." 511 U.S. 1, 5 (1994). No particular "form of words" is required. *Id*. The instructions must be taken as a whole. *Id*.

Parks is not challenging a reasonable-doubt instruction. The jury instructions used in Parks's trial do not contain any of the prohibited and problematic phrases found in *Cage* or *Sullivan*. [13-4] at 4-45. The jury in Parks's trial was specifically instructed Parks must be acquitted if the State did not prove each element of the offense beyond a reasonable doubt. Allowing Instruction S-6 was not contrary to or an unreasonable application of *Sullivan*.

D. <u>Ground Four – Service of the Indictment</u>

In Ground Four, Parks alleges the Circuit Court should have dismissed the indictment because Parks was never personally served a copy. [1] at 9-10. This claim was rejected on direct appeal by the Mississippi Court of Appeals. The Mississippi Court of Appeals interpreted and applied Mississippi Code Annotated section 99-7-9 (Rev. 2015), which provides, "After the arrest of the person indicted, and prior to arraignment, a copy of the indictment shall be served on such person."

The Mississippi Court of Appeals concluded that the record refuted Parks's assertion that a copy of the indictment had not been served on him. *Parks,* 228 So. 3d at 863.  Parks's appointed attorney received the indictment on Parks's behalf, the Circuit Court Clerk provided Parks with a copy of the indictment upon his request, and the indictment was read to Parks in open court before he entered his plea. *Id.* Parks's Ground Four raises an issue of state procedural law and the State's interpretation of same. Parks has not shown the State court's decision was contrary to, or an unreasonable application of, clearly established law as set forth by the United States Supreme Court.

E.  Ground Five – Speedy Trial Claim

Parks argues in Ground Five that the trial court erred in denying his motion to dismiss the indictment because of a speedy trial violation. [1] at 6. The Circuit Court and Mississippi Court of Appeals correctly identified *Barker v. Wingo*, 407 U.S. 514 (1972) as the framework for analyzing Parks's Sixth Amendment speedy trial claim. *Parks,* 228 So. 3d at 864. The *Barker* factors are (1) the length of delay, (2) the reason for the delay, (3) the assertion of the right, and (4) prejudice to the defendant.

15

*Barker,* 407 U.S. at 529. The *Barker* factors "are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

The Mississippi Court of Appeals observed that a speedy trial claim is a fact question and affirmed because there was "substantial credible evidence to support the circuit court's decision and its subsequent denial of Parks's motion to dismiss for lack of a speedy trial." *Parks,* 228 So.3d at 866. The length of delay, the first factor, was found presumptively prejudicial because there was an eleven-month delay between Parks's arrest and his first pretrial hearing. *Id.* at 864. The third factor weighed in Parks's favor because Parks had asserted his right to a speedy trial on multiple occasions. *Id.* at 865.

The second factor weighed against Parks. The Circuit Court considered the original trial date in light of the heavy docket, multiple counts against Parks, workload of the public defender's office, and Parks's counsel's involvement with other clients. *Id.* at 864. While some of these "circumstances must rest with the government" or are neutral under Fifth Circuit precedent, *Boyer v. Vannoy,* 863 F.3d 428, 444 (5th Cir. 2017), other circumstances were attributable to Parks. The State courts emphasized that "Parks never objected to his initial trial date, and the additional delay in his trial was attributable to his pro se motion to replace his trial counsel." *Parks,* 228 So. 3d. at 866. Parks also did not object to rescheduling the trial at the Circuit Court's hearing addressing Parks's motion for new appointed counsel. *Id.* at 864-65.

The Mississippi Court of Appeals correctly observed the fourth factor, prejudice to the defendant, was "the most serious" factor in the *Barker* analysis. *See Barker,* 407 U.S. at 532. The Mississippi Court of Appeals found no evidence in the record to support Parks's allegations of an impaired defense. Parks provided no medical proof to support his claims of anxiety-based prejudice, his "claims of lost evidence were speculative," and he "failed to support his contention that the evidence from his home disappeared during his incarceration." *Parks,* 228 So. 3d at 865-66.

While Parks disagrees with the State court's evaluation of the *Barker* factors, he has not shown the State court's decision rejecting his speedy trial claim was contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court in *Barker*. Ground Five is without merit.

## F.  Ground Six – Right to a Public Trial

In Ground Six, Parks asserts he was denied his Sixth Amendment right to a public trial when his friend Amber Andrews was escorted out of the courtroom during his trial. [1] at 17. On direct appeal, the Mississippi Court of Appeals concluded the record failed to support Parks's assertion that the Circuit Court excluded Andrews from attending Parks's trial. *Parks,* 228 So. 3d at 870. The Court of Appeals cited the record from a hearing conducted outside of the jury's presence:

> The Court: [S]heriffs, do you all know who that person was that came through the courtroom and created the disturbance . . . ?
>
> Deputy John Kelly: After I got her out the door[,] she claimed that she's known [Parks] for a while[,] and she didn't appreciate what he is going through. She was trying to speak to his attorney.

The Court: Do you anticipate her coming back, wanting to come back to the courtroom?

Mr. Damion Reese: Judge, she's been advised by me not to come in the courtroom. She said her name was Amber. She said she is a friend of . . . Parks. She said she read and saw some stuff in the paper[,] and it disturbed her[,] and she said that . . . Parks wasn't like that. I advised her . . ., after the sheriff had advised her, that she could not be disrupting the courtroom. She did say she wanted to speak with Mr. Stewart[,] Parks's attorney]. I told her she had to wait out there[,]and . . . she wanted to leave her number. I said[,] if you did, he probably wouldn't be able to call you until after trial, So if you wanted to have a seat, at some break or point in time[,] he may be able to speak with you, I don't know. But she is not coming back in the courtroom.

The Court: The court's observation was that she walked down the aisle of the courtroom with stride and strut that was disruptive to me, and I suspect to the . . . jurors, and when I made eye contact with her, she waved at me like I knew who she was[,] and she was trying to make contact with defense counsel, and [she] moved about the courtroom rather disruptively. And I think [she] moved a time or two again before she voluntarily left and was escorted finally out by some security. So I think she was disruptive, and I want the record to reflect that. In the instance you see her and she wants to come back in, she is to remain out[side] until I can have a word with her outside the presence of the jury. As it relates to her involvement and wanting to discuss anything with [the] defense, that's as between them.

*Id.* at 869-70.

Parks argues the State court's decision was contrary to, and involved an unreasonable application of *Waller v. Georgia*, 467 U.S. 39, 45 (1984) and *Presley v. Georgia*, 558 U.S. 209 (2010). In *Waller,* the United States Supreme Court explained that the right to a speedy trial is not absolute and "may give way in certain cases to other rights or interests." 467 U.S. at 45. The United States Supreme Court held the closure of a courtroom during a criminal proceeding does not violate a defendant's Sixth Amendment rights where: (1) the party seeking to close the courtroom advances

an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure. *Id.* at 45-49.

In *Presley,* the United States Supreme Court clarified that under the third prong of *Waller*, trial courts "are obligated to take every reasonable measure to accommodate public attendance at criminal trials" and "are required to consider alternatives to closure even when they are not offered by the parties." 558 U.S. at 214-15. *Presley* requires "the particular interest, and threat to that interest, must 'be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Id.* at 215.

*Waller* and *Presley* addressed total closures of criminal hearings, from which all members of the public were excluded. This case concerns one spectator, who caused a disturbance, was confronted by security, and ultimately was not prohibited from attending Parks's trial. The trial judge explained to the security guard that if Andrews wanted to come back into the courtroom, she must first speak with him outside the presence of the jury. The Circuit Court created a detailed record and ensured Parks received the safeguards of the public trial guarantee. Parks has not demonstrated that the State court's decision was contrary to or involved an unreasonable application of *Waller* or *Presley*.

G. Ground Seven – Prosecutorial Misconduct

In Ground Seven, Parks argues he was denied a fair trial because the State's closing argument was inflammatory and exceeded the facts in evidence. [2] at 12-16. Parks characterizes the claim as one for prosecutorial misconduct. Parks raised this claim on direct appeal in a pro se supplemental brief. The Mississippi Court of Appeals found Parks's claim procedurally barred because Parks "did not raise any objection to the State's closing argument at trial." *Parks*, 228 So. 3d at 870-71. In refusing to hear the merits of Parks's claim, the Mississippi Court of Appeals relied on Mississippi's contemporaneous objection rule in Miss. Code. Ann. section 99-39-21(1).

Parks's prosecutorial misconduct claim is barred from federal habeas review because the Mississippi Court of Appeals refused to consider the procedurally defaulted claim on the merits because of Parks's failure to present this issue to the Circuit Court in the form of a contemporaneous objection. The Fifth Circuit and this Court have held that Mississippi's contemporaneous objection rule is an independent and adequate state procedural bar to federal habeas relief. *Stokes v. Anderson*, 123 F.3d 858, 860-61 (5th Cir. 1997); *Jordan v. Epps*, 740 F. Supp. 2d 802, 847 (S.D. Miss. 2010) ("[T]he Mississippi Supreme Court routinely applies a procedural bar where a defendant did not make a contemporaneous objection to the prosecutor's statements that he challenges on appeal.").

Parks has attempted to circumvent the procedural bar by demonstrating that the State courts have failed to widely or consistently follow the contemporaneous objection rule. [16-1] at 2-6. A close review of the cases cited by Parks shows that in

some of the cases, the State courts alternatively ruled on the merits after clearly expressing reliance on the procedural bar, which is not considered an adjudication on the merits. *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999). In other cases, the State court reviewed the merits of the argument after plain error was found.

> Mississippi has unquestionably relaxed the contemporaneous objection rule in cases where it found plain error. However, the Fifth Circuit has held that this practice has not 'detracted from the consistency of Mississippi's application of the rule.' *Wiley v. Puckett*, 969 F.2d 86, 103 (5th Cir.1992) (citing *Hill v. Black*, 887 F.2d 513, 516 (5th Cir.1989)).

*Jordan,* 740 F. Supp. 2d at 848. Parks has not shown inconsistent and irregular application of the section 99-39-21(1) bar.

Having defaulted Ground Seven pursuant to independent and adequate state procedural rule, the Court may review the merits of Parks's claim only if Parks can show cause and actual prejudice, or that a fundamental miscarriage of justice would result from the Court's failure to consider the claims. *Coleman,* 501 U.S. at 750. Parks alleges his court-appointed counsel's failure to object to the prosecution's closing argument was ineffective assistance of counsel. [15] at 9. Parks did not advance a claim in State court alleging ineffective assistance of counsel based on his court-appointed counsel's failure to object to the prosecution's closing argument. For this reason, the ineffective assistance of counsel claim cannot form the basis for "cause" for Parks's procedural default. *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("'[A] claim for ineffective assistance,' we said, generally must 'be presented to the state courts as an

independent claim before it may be used to establish cause for a procedural default.'")).

To the extent Parks alleges the prosecutor's statements were so inflammatory that the trial judge should have intervened, Parks likewise did not advance such a claim in State court and cannot use the claim now to establish cause for his procedural default. Parks raises an issue of state evidentiary law and has not shown the trial judge's decision not to object sua sponte was contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court. Application of the procedural bar will not result in a fundamental miscarriage of justice because Parks has not shown – with new and reliable evidence not available at trial – that he did not commit the crimes for which he was convicted.

H. Ground Eight – Pretrial Request for New Counsel

In Ground Eight, Parks alleges the Circuit Court violated his Sixth Amendment right to effective assistance of counsel by denying his pro se pretrial motion for appointment of new counsel. [2] at 18-20. The Circuit Court held a hearing on the issue, where Parks's appointed counsel informed the Circuit Court he had visited and communicated with Parks about his case, and discussed issues related to Parks's requests for subpoenas and business information. *Parks,* 228 So. 3d at 866-67. Counsel acknowledged Parks had filed several bar complaints against him. *Id.* at 866. He advised the Circuit Court that, while Parks typically did not want to hear his thoughts, nothing had transpired that would require his removal. *Id.* The Circuit Court concluded Parks's appointed counsel was a competent attorney who had done

nothing detrimental to Parks's case, and Parks would suffer no prejudice by proceeding to trial with his counsel. *Id.* at 866-67.

On direct appeal, the Mississippi Court of Appeals found no abuse of discretion in the Circuit Court's denial of Parks's motion for new trial counsel. *Id.* The Mississippi Court of Appeals explained that "[a]lthough the record reflects that [Parks's counsel] and Parks disagreed over trial strategy, our caselaw clearly establishes that trial strategy is left to the attorney's sound discretion." *Id.* at 867 (citing *Nichols v. State,* 27 So. 3d 433, 443 (Miss. Ct. App. 2009)). The Mississippi Court of Appeals also evaluated Parks's claim as one alleging ineffective assistance of counsel. The Mississippi Court of Appeals concluded Parks did not meet the standard for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984) because he failed to establish his attorney's performance was deficient and also failed to show he was prejudiced by any alleged deficiency. *Id.* at 870.

In this proceeding, Parks continues to complain about his court-appointed trial counsel and generically claims he was denied his right to effective assistance of counsel. Parks, however, has not shown the decision denying his motion for new counsel was contrary to, or an unreasonable application of, clearly established federal law as set forth by the Supreme Court of the United States.

I.  <u>Ground Nine – Illegal Sentence</u>

In Ground Nine, Parks maintains the imposition of a sixty-year sentence on a forty-three-year-old African American male in Mississippi is cruel and unusual

punishment under the Eighth Amendment. [1] at 20; [15] at 102. Parks alleges his sentences exceeded the maximum authorized by law because the sentence "was well beyond Petitioner's life expectancy." [1] at 20. Parks raised this issue when requesting postconviction review. The Mississippi Supreme Court held the claim was procedurally barred due to Parks's failure to cite supporting authority. [12-2] at 1. In this proceeding, Parks conceded in his Traverse that Ground Nine was procedurally barred. However, he attempted to reassert the claim in a motion to amend his Petition. [33] at 2.

The state courts have strictly and routinely applied the bar for failure to cite authority. *Glasper v. McCaskey*, No. 4:07-cv-84-M-B, 2008 WL 2699791, at *3 (N.D. Miss. June 30, 2008) (citing *Simmons v. State*, 805 So.2d 452, 487 (Miss. 2001)). Parks has offered no argument to the contrary. Parks does not set forth any explanation for his failure to cite supporting authority before the State court. Absent a showing of "cause," it is unnecessary for the Court to consider whether there is actual prejudice. *See Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996). Application of the procedural bar will not result in a fundamental miscarriage of justice because Parks has not shown – with new and reliable evidence not available at trial – that he did not commit the crimes for which he was convicted. Ground Nine is procedurally barred.

## NOTICE OF RIGHT TO APPEAL/OBJECT

In accordance with Local Uniform Civil Rule 72(a)(3) and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the proposed findings and recommendations.

The District Judge at that time may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this Report and Recommendation within fourteen days after being served with a copy shall bar that party, except under grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. §636(b)(1). An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections.

**SIGNED**, this the 30th day of March, 2021.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE